# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIRO BARAJAS EDUARDO BOSO,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al.,<br><br>Respondents. | Case No. 1:26-cv-01790-KES-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS, DENY MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT, AND DIRECT RESPONDENTS TO PROVIDE PETITIONER WITH BOND HEARING |

Petitioner is an immigration detainee proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## I.

## BACKGROUND

Petitioner is a citizen of Mexico who entered the United at an unknown date and at an unknown location without authorization. (ECF No. 10-1 at 1.[1]) Petitioner alleges that he has lived in the United States for as long as he can remember and when he turned fifteen years old he applied for Deferred Action for Childhood Arrivals ("DACA"). (ECF No. 1 at 5.) On March 21, 2024, Petitioner filed a "Form I-821D, Consideration of Deferred Action for Childhood Arrivals," which was approved by U.S. Citizenship and Immigration Services ("USCIS") "on May 29, 2024, deferring [Petitioner's] removal from the United States." (ECF No. 10-4 at 1.)

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

1

On June 4, 2024, a domestic violence felony complaint was filed in the Fresno County Superior Court alleging that on June 2, 2024, Petitioner committed an assault on Jane Doe by "means of force likely to produce great bodily injury," among other charges. (ECF No. 10-2 at 1–2.) On August 13, 2024, Petitioner pleaded no contest to false imprisonment by means of menace. (Id. at 3–4.) Petitioner received three years of probation and a sentence of 365 days in county jail of which 275 days were suspended. (Id. at 5–8.) On August 12, 2025, Petitioner was arraigned on a probation violation and sentenced to ninety days in county jail. (Id. at 9–10.)

On February 12, 2026, a warrant for arrest of Petitioner was issued by immigration officials as part of a targeted enforcement operation due to Petitioner's criminal history. (ECF No. 10-1 at 2–3; ECF No. 10-3.) On February 17, 2026, Petitioner was arrested on that warrant and placed in removal proceedings. (ECF No. 10-1 at 2–3.) Petitioner was also served notice of intent to terminate his DACA grant. (ECF No. 10-4.)

On March 5, 2026, Petitioner filed a petition for writ of habeas corpus raising a prolonged detention due process claim. (ECF No. 1 at 6–17.) The Court construed the petition "as raising a due process claim regarding Petitioner's detention and challenging the statutory authority of Petitioner's detention." (ECF No. 8 at 1–2.) Respondents filed an answer, and Petitioner filed a traverse. (ECF Nos. 10, 11.) Thereafter, Petitioner also filed a motion for temporary restraining order. (ECF No. 12.)

**II.**

**DISCUSSION**

**A.  Statutory Framework and Applicability of 8 U.S.C. § 1226(c)(1)(E)**

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection

A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Subsection A is the default detention statute for noncitizens in removal proceedings and applies to noncitizens '[e]xcept as provided in [Subsection C].'" Avilez, 69 F.4th at 529 (alterations in original) (quoting 8 U.S.C. § 1226(a)). "[D]etention under Subsection A is discretionary" and "provides for release on bond or conditional parole." Avilez, 69 F.4th at 529. "When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination," and the noncitizen "will be released if he 'demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.'" Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022) (quoting 8 C.F.R. § 236.1(c)(8)).

> Although section 1226(a) sets out a discretionary detention scheme, section 1226(c) provides an exception which mandates detention for certain criminal noncitizens. *See* 8 U.S.C. § 1226(c)(1)(E). Section 1226(c)(1)(E), which was added to the statute in 2025 by the Laken Riley Act, mandates detention for any noncitizen (i) who is inadmissible under section 1182(a)(6)(A)(i) as an "alien present in the United States without being admitted or paroled," *and* (ii) who "is charged with, arrested for, convicted of, or admits" to committing certain crimes.

Lepe v. Andrews, 801 F. Supp. 3d 1104, 1115 (E.D. Cal. 2025) (quoting 8 U.S.C. § 1226(c)(1)(E)). Accord J.S.H.M v. Wofford, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *12 (E.D. Cal. Oct. 16, 2025).

To avoid "serious due process concerns," "courts have construed the Laken Riley Act to apply only where an individual is *currently* charged with or arrested for the enumerated crimes[.]" Singh v. Chestnut, No. 1:26-CV-00546-DJC-AC, 2026 WL 266021, at *2 (E.D. Cal. Feb. 2, 2026). Thus, "mandatory detention is not required when charges are never filed, *Helbrum v. Williams Olson*, No. 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *6 (S.D. Iowa Sept. 30, 2025), or where an individual has been acquitted, *E.C. v. Noem*, No. 2:25-cv-01789-RFB-BNW, 2025 WL 2916264, at *10 (D. Nev. Oct. 14, 2025)." Singh, 2026 WL 266021, at *2. Courts have found serious questions going to the merits as to the application of the Laken Riley Act where noncitizens were arrested but prosecutors ultimately declined to file charges and closed the case. Singh, 2026 WL 266021, at *2; S.E. v. Noem, No. 1:26-cv-00356-DAD-SCR, 2026 WL 206085 (E.D. Cal. Jan. 27, 2026).

Here, Respondents argue that "Petitioner's detention is mandatory under 8 U.S.C. § 1226(c)(1)(E)" because "the domestic violence felony complaint makes clear that Petitioner was arrested for is a crime that falls within section 1226(c)(1)(E)(i)–(ii)"—that is, "Petitioner committed an assault on Jane Doe by 'means of force likely to produce great bodily injury[.]'" (ECF No. 10 at 3, 2 (citation omitted).) However, at the time Petitioner was arrested on February 17, 2026, he was not charged with, arrested for, or convicted of committing an assault on Jane Doe by means of force likely to produce great bodily injury. "The statute's 'use of the present tense is conspicuous and important.'" Singh v. Wofford, No. 1:26-CV-01161-KES-EPG (HC), 2026 WL 972547, at *2 (E.D. Cal. Apr. 10, 2026) (quoting Helbrum, 2025 WL 2840273, at *5). "'By using the present tense, § 1226(c)(1)(E)(ii) establishes that detention is mandatory only so long as the charges either remain pending or are resolved in a way that triggers one of the other clauses of the statute[,]' such as by a conviction." Singh, 2026 WL 972547, at *2 (quoting Helbrum, 2025 WL 2840273, at *5–6). Respondents do not contend that one of the other clauses of 8 U.S.C. § 1226(c) applies, and Respondents do not argue that Petitioner's conviction for false imprisonment by means of menace falls within § 1226(c)(1)(E)(ii). Accordingly, the Court recommends finding that 8 U.S.C. § 1226(c)(1)(E) is inapplicable and Petitioner is not subject to mandatory detention.

**B. Due Process**

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that she will be re-detained only if she violates the conditions of her release." Garro Pinchi v. Noem, No. 25-CV-05632-PCP, --- F. Supp. 3d. ----, 2025 WL 3691938, at *30 (N.D. Cal. Dec. 19, 2025) (citing Morrissey v. Brewer, 408 U.S. 471, 482 (1972)). "Other courts, including this Court, have held similarly." J.E.H.G. v. Chestnut, No. 1:25-cv-01673-JLT-SKO, 2025 WL 3523108, at *10 (E.D. Cal. Dec. 9, 2025) (citing Doe v. Becerra, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025)). "Accordingly, a noncitizen released from custody

pending removal proceedings has a protected liberty interest in remaining out of custody." Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025).

To the extent that Petitioner has not previously been detained by immigration officials and released, the Court finds the reasoning of Kharitonova v. Albarran, No. 3:26-CV-01362-JSC, 2026 WL 531441 (N.D. Cal. Feb. 25, 2026), persuasive. Kharitonova concerned a noncitizen who entered the United States on a nonimmigrant visa in 2012, filed her application for asylum and withholding of removal within one year of her arrival, had her asylum case referred to the Executive Office for Immigration Review, which issued a Notice to Appear, resided continuously in the United States, attended all scheduled hearings, was preparing to appear for her merits hearing scheduled for December 22, 2026, and in February 2026 "was detained on the street in front of the home in San Francisco where she work[ed] as a full-time nanny." Id. at *1. The district court held that the "government's decision not to detain Petitioner 'when it processed her asylum application, took her biometrics, referred her asylum case to EOIR, and advised her to appear for multiple hearings over a period of years,' . . . gave rise to 'a liberty interest on Petitioner's part that she would remain free unless she violated her conditions of release.'" Id. at *2 (citation omitted). The court rejected the "government's insistence Petitioner lacks a liberty interest because it never before sought to detain her" as "specious" and "unsupported by any legal authority" because "[a]lthough the government did not detain and then release her, it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained." Kharitonova, 2026 WL 531441, at *2. See also Villanueva-Montanez v. Lyons, No. 2:26-cv-00954-DAD-CKD, 2026 WL 797930, at *1 (E.D. Cal. Mar. 23, 2026) ("[T]he release (or decision not to detain) is 'based on an evaluation[,]' allows for 'a relatively normal life[,]' and as a result the parolee or petitioner 'relied on at least an implicit promise' that the parole or decision not to detain will be revoked only if he fails to live up to the applicable 'conditions.'" (first alteration added) (quoting Morrissey v. Brewer, 408 U.S. 471, 482 (1972))).

///

Here, Petitioner entered the United States without inspection, but his DACA application was approved by USCIS "on May 29, 2024, deferring [Petitioner's] removal from the United States." (ECF No. 10-4 at 1.) Although on February 20, 2026, USCIS issued a notice of "its intent to terminate [Petitioner's] deferred action for childhood arrivals" due to his felony conviction, the Court recommends finding that Petitioner maintains a liberty interest in his continued release. See Anderson v. Chernut, No. 1:26-CV-01960-DAD-CKD, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) (finding, in context of petitioner who was granted parole and whose DACA status was terminated due to a DUI conviction, "that the government's knowing decision not to detain an individual creates a liberty interest in their continued release" and "[e]ven though petitioner's parole authorization expired, petitioner maintains her liberty interest in continued release"); Rocha Ramirez v. Warden, No. 1:26-CV-02544-DAD-AC, 2026 WL 1078250, at *1 (E.D. Cal. Apr. 21, 2026) (applying Anderson where petitioner entered the United States in 2006 on a valid visa that expired in 2011 and petitioner's DACA grant expired in 2021); D.L.C. v. Wofford, No. 1:25-cv-01996-DC-JDP, 2026 WL 145646, at *4 (E.D. Cal. Jan. 20, 2026) ("[N]umerous courts in the Ninth Circuit have found that when a noncitizen is paroled under that section, his liberty interest does not expire along with his parole.") (collecting cases).

"Thus, the Court must evaluate the three-part test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 334-335 (1976), to determine whether the procedures (or lack thereof) that have been applied to Petitioner are sufficient to protect the liberty interest at issue." J.E.H.G., 2025 WL 3523108, at *11.

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

As to private interest, it "is beyond dispute" that Petitioner's interest here is "fundamental." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (citing Foucha v.

Louisiana, 504 U.S. 71, 80 (1992)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Turning to the second factor, the risk of erroneous deprivation of Petitioner's liberty is high where, as here, '[the petitioner] has not received [and will not receive] any bond or custody redetermination hearing.'" Kakkar v. Chestnut, No. 1:25-CV-1627 JLT SAB, 2025 WL 3638298, at *7 (E.D. Cal. Dec. 15, 2025) (alterations in original) (quoting A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025)). "Finally, as other courts have done, this Court concludes that the government's interest in detaining Petitioner without proper process is slight." J.E.H.G., 2025 WL 3523108, at *12. Accordingly, the Mathews factors weigh in favor of a bond hearing.

Based on the foregoing, the Court recommends finding that Petitioner has a protected liberty interest in remaining out of custody and that his detention without a bond hearing violates due process.[2] The Court now turns to whether a pre-deprivation or post-deprivation hearing is appropriate in this case.

> The Supreme Court has held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). However, the Court also recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. *Id.* at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ"). The rapidly developing caselaw on this subject gives limited guidance as to where this line should be drawn. Some courts that have addressed detention-related habeas petitions brought by persons released with enhanced supervision conditions have required pre-deprivation process, but in somewhat different circumstances. In *E.A.T.-B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025), the district court ordered the release of a petitioner arrested by ICE immediately after appearing in immigration court. That court agreed with the petitioner that ICE's post hoc explanation that violations warranted his detention was pretextual, given that ICE first became aware of petitioner's alleged violations a few hours before his immigration hearing, DHS did not raise those violations at the hearing or argue the petitioner should be detained for any reason, and the petitioner was then provided multiple, inconsistent justifications for his arrest. *Id*. In *Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025), converted to preliminary injunction sub nom, 2025 WL 2411010, at *1 (E.D. Cal.

---

[2] In light of this conclusion, the Court declines to address Petitioner's prolonged detention claim.

Aug. 20, 2025), the court ordered immediate release of in immigration detainee who had been in compliance with his conditions of release, even though he had incurred a misdemeanor arrest while on parole, in part because no charges were ever filed.

In contrast, this Court ordered a parole revocation hearing in *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), where the petitioner's records indicated numerous violations. Though Martinez Hernandez offered explanations for the violations and there was a dispute of fact as to whether the violations occurred, ICE's reliance upon those violations was "not obviously pretextual." *Id*. at \* 12 ("If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight."). As this Court noted in *Martinez Hernandez*:

> In similar circumstances, courts have refused to release the petitioners but have ordered timely bond hearings. *Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at \*8 (E.D. Cal. Aug. 15, 2025), citing *Perera v. Jennings*, et. al, No. 21-CV-04136-BLF, 2021 WL 2400981, at \*5 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at \*6 (N.D. Cal. Mar. 31, 2023). "[A]llowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at \*8 (N.D. Cal. July 17, 2025). Thus, the Court concludes that prompt, post-deprivation process is required here.

*Id*.

J.E.H.G., 2025 WL 3523108, at \*11–12.

Here, Petitioner was detained due to his criminal history, including a felony conviction. (ECF No. 10-1 at 2–3.) Accordingly, the Court recommends that a post-deprivation hearing is appropriate based on the facts of this case, and that "the burden at any such hearing [be placed] on the government to demonstrate to a neutral decisionmaker by clear and convincing evidence that re-detention is necessary to prevent danger to the community or flight." J.E.H.G., 2025 WL 3523108, at \*14 (citing Pinchi v. Noem, 792 F. Supp. 3d 1025, 2025 WL 2084921, at \*7 (N.D. Cal. 2025)). See J.E.H.G., 2025 WL 3523108, at \*14 ("[T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention.").

///

///

///

8

## III.

## RECOMMENDATION

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED on the construed due process claim challenging Petitioner's detention.

2. Petitioner's motion for temporary restraining order (ECF No. 12) be DENIED as moot.

3. Respondents be directed to provide Petitioner with an individualized hearing before an immigration judge where the government must prove by clear and convincing evidence that Petitioner is a flight risk or a danger to the community to justify his detention.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **April 30, 2026**

STANLEY A. BOONE
United States Magistrate Judge

9